```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

CHRISTOPHER KENNEDY,               :

     Plaintiff,                    :

V.                                 :   CASE NO. 3:07-CV-214 (RNC)

JAMES CHAMBERLAND, ET AL.,         :

     Defendants.                   :
```

RULING AND ORDER

Plaintiff Christopher Kennedy brings this action under 42 U.S.C. § 1983 seeking damages for false arrest and malicious prosecution following his acquittal in state court on charges of custodial interference in the second degree.[1] Plaintiff was arrested pursuant to a warrant issued by a judge of the Connecticut Superior Court on the basis of an affidavit provided by defendant James Chamberland, an Enfield police officer. Chamberland's affidavit relied on information provided to him by the plaintiff's former spouse, Leanne Putnam, and her fiancé, James Fournier, both also defendants in this case. The complaint seeks damages against Officer Chamberland under § 1983 on the ground that he omitted exculpatory information from his affidavit in violation of the Fourth Amendment. Damages are sought against

---

[1] Conn. Gen. Stat. § 53a-98(a)(3) provides, "A person is guilty of custodial interference in the second degree when . . . knowing that he has no legal right to do so, he holds, keeps, or otherwise refuses to return a child who is less than sixteen years old to such child's lawful custodian after a request by such custodian for the return of the child."

Putnam and Fournier under state law.  The case is now before the Court on Chamberland's motion for summary judgment [Doc. # 44].  He contends that the omitted information cited by the plaintiff was not material to the existence of probable cause for the arrest and that he is entitled to qualified immunity as a matter of law.  I agree with Chamberland on both points.  Accordingly, the motion for summary judgment is granted and the federal claims are dismissed with prejudice.  I decline to exercise supplemental jurisdiction over the state law claims against Putnam and Fournier, which are dismissed without prejudice.[2]

Summary Judgment

Summary judgment may be granted when there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In assessing the evidence, the Court must review the record as a whole, credit evidence favoring the nonmovant, give the nonmovant the benefit of reasonable inferences, and disregard evidence favorable to the

---

[2] A false arrest claim against Officer Chamberland is not expressly pleaded in the complaint, as he correctly points out. To facilitate a resolution of this claim on the merits, however, and in the absence of any apparent prejudice to the officer, plaintiff's memorandum in opposition is deemed to include a request for leave to amend the complaint to include a claim of false arrest and the request is hereby granted.

movant that a jury would not have to believe.  <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150-51 (2000)(discussing identical standard under F<small>ED</small>. R. C<small>IV</small>. P. 50).

<u>Facts</u>

The parties' Local Rule 56(a) statements and supporting materials, viewed most favorably to the plaintiff, would permit a jury to find the following facts.  Plaintiff and Putman were married in 1988 and divorced in 2002.  They have three children, Sean, Kathleen and Brenna.  At the time of the events underlying this action, the children were 14, 10 and 7, respectively.  After the divorce, the plaintiff and Putman initially had joint custody of the children.  In February 2003, Putman was granted sole custody and the plaintiff was granted visitation rights.

The events that led to the plaintiff's arrest occurred on June 18, 2003, which was a Wednesday.  Plaintiff had visitation rights on Wednesdays but the custody order required him to "return [the] children to the Mother's home" by 7:00 p.m.  On the day in question, he picked up Sean from school and took him to a counseling session with a family therapist.  After the counseling session, he picked up Kathleen and Brenna from Putnam's house, which was located at 3 School Street in Enfield.  While there, he saw no sign of Putnam or her parents.  He then took all three children to his house in Ellington, where they watched a movie.  Some time before 7:00 p.m., Sean told the plaintiff that Putman and Fournier had gone out of town for the evening but her parents

3

would be at her house at 7:00 p.m. to look after the children. Plaintiff called the house to find out if Putnam's parents were there. No one answered. He also tried to reach Putnam on her cell phone. Again no one answered. He thought it would be unsafe to leave the children at Putnam's house unless an adult was present and therefore decided they should spend the night with him.

At about 9:00 p.m., plaintiff left a message on Putman's cell phone explaining that he had decided to keep the children overnight because she had not responded to his messages. At about 9:30 p.m., he spoke to Putnam and Fournier by telephone. During this call, they threatened him because he had not returned the children.

At about 10:00 p.m., Putnam called the Enfield Police Department to complain that the plaintiff was refusing to return the children to her residence in violation of the custody order. Officer Chamberland, a 15-year veteran of the Enfield Police Department, was on patrol at the time. He was dispatched to Putnam's address on School Street.

Upon his arrival at Putnam's residence, Chamberland spoke with her. She told the officer the following: she had sole custody of the children; the plaintiff had visitation rights on Wednesdays until 7:00 p.m.; he was required to return the children to her house by 7:00 p.m.; she had made arrangements for her parents to take care of the children when they were dropped

off at 7:00 p.m.; she had asked the plaintiff to return the children; and he had refused in violation of the custody order. Putnam had a copy of the custody order, which she showed the officer.

After speaking with Putnam, Officer Chamberland spoke with Fournier, who corroborated Putnam's account. In particular, Fournier confirmed that the plaintiff had been asked to return the children to Putnam's house that night and had refused to do so.

After speaking with Putnam and Fournier, Officer Chamberland called the plaintiff and asked that he return the children to Putnam's house as required by the custody order. The plaintiff responded that the children were in bed. The plaintiff explained that he had called Putnam's house earlier in the evening but no one had answered and he did not want to leave the children there alone. He stated that he felt it was in the children's best interest to leave them in bed. Plaintiff denied having any knowledge that Putman's parents were going to be at the house at 7:00 p.m. to care for the children and denied having been requested to return the children. Chamberland told the plaintiff that if he did not return the children, he would be in violation of Conn. Gen. Stat. § 53a-98(a)(3) and could face arrest. Plaintiff then agreed to return the children to Putnam's house and did so at about 11:00 p.m.

The next day, Putnam and Fournier went to the Enfield Police

Department and provided Officer Chamberland with signed statements concerning the relevant events.  Their written statements are consistent with the oral statements they gave him the night before.

Officer Chamberland subsequently obtained a written statement from the oldest child, Sean, which recounted the following.  On the day in question, Sean and the plaintiff picked up Kathleen and Brenna from Putnam's house on School Street about an hour later than usual and drove to the plaintiff's house where they watched a movie.  At about 7:00 p.m., Sean told the plaintiff that the children should be brought back to the School Street address.  According to Sean's statement, the plaintiff replied, "I picked up your sisters an hour late, I'm keeping them an hour late."  Both Sean and his sister Kathleen told the plaintiff that Putnam's parents were going to be at the School Street address so they could be dropped off.  According to Sean's statement, the plaintiff then made a phone call, hung up the phone and said that Putnam's parents were not there.

Officer Chamberland then obtained a written statement from the plaintiff.  Plaintiff's written statement provides the following version of the relevant events.  When he and Sean picked up Kathleen and Brenna at Putnam's house, the children indicated that Putnam was out with Fournier and would not be home that night.  It appeared to the plaintiff that no adult was present at Putnam's residence at the time.  He tried to call

Putnam at 6:00 p.m., 7:00 p.m. and 8:00 p.m., but she did not answer.  He left messages on both her cell phone and home phone asking when she would be home so he could return the children.  He called again at 9:00 p.m. and left a message saying he was putting the children in bed and would bring them to school and to Putnam's house in the morning.  He received a call from Putnam at around 9:30 p.m., in which she threatened to call the police and have him arrested for not returning the children by 7:00 p.m.  She did not ask him to return the children.  Rather, she told him she intended to have him arrested as "payback" for her arrest for second-degree assault.  The plaintiff called her back to ask her not to involve the children.  His call was answered by Fournier, who threatened the plaintiff, saying he had contacts with the Connecticut Department of Children and Families, as well as the local police, and the plaintiff would never see his children again.

    On July 2, 2003, Officer Chamberland prepared an affidavit in support of an arrest warrant charging the plaintiff with three counts of custodial interference in the second degree under § 53a-98(a)(3).  The affidavit accurately summarizes the oral and written statements provided to Chamberland by Putnam, Fournier and Sean.  With regard to the plaintiff's version of events, Chamberland's affidavit recounts the following:

> [O]n 6/18/03 at approx. 10:30pm I called and spoke to the accused.  He stated over the phone that he had the children and they were in bed.  That he made attempts

to contact Leanna Putnam but he was only able to leave a message. Stated he called the house and no one answered the phone. That he didn't want to bring the kids home and leave them there alone. That he felt it was in the best interest of the kids to stay with him until the morning where (sic) he would then return them home. That he denied being told to return the children home by Leanna Putman. That he never knew Leanna's parents were at 3 School St[reet] awaiting the return of the children. That he denied being told by his children their grandparents were waiting at 3 School St[reet] for them.

Chamberland submitted his affidavit to an assistant state's attorney, who subsequently presented it to a judge of the Connecticut Superior Court.[3] The judge found probable cause that plaintiff had violated § 53a-98(a)(3) and issued a warrant for his arrest. On July 22, 2003, the plaintiff was arrested and released on a $1,000 nonsurety bond. In February 2006, he was found not guilty after a jury trial. He subsequently brought this suit.

Discussion

    A.  False Arrest

The Fourth Amendment guarantees a right "to be free from an arrest based on a warrant that would not have been issued if the officer seeking the warrant had disclosed to the issuing magistrate information within the officer's knowledge that negated probable cause." Brown v. D'Amico, 35 F.3d 97, 99 (2d Cir. 1994). To establish a violation of this right, the

---

[3] The record does not indicate whether the written statements Chamberland obtained were provided to the Superior Court at the time the arrest warrant was sought.

plaintiff must prove that Officer Chamberland knowingly and deliberately, or with reckless disregard of the truth, made false statements or material omissions in the warrant affidavit and that the statements or omissions were necessary to the finding of probable cause.

Probable cause to arrest exists when, at the time of the arrest, reasonably trustworthy facts and circumstances known to the authorities are sufficient to warrant a person of reasonable caution to believe that an offense has been committed by the person to be arrested. Brinegar v. United States, 338 U.S. 160, 175-76 (1949). "[P]robable cause is a fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). It requires more than bare suspicion but need not be based on evidence sufficient to support a conviction. Brinegar, 338 U.S. at 175. The probable cause requirement is satisfied if, given all the available information, there is a "fair probability" that the person to be arrested has committed an offense. See Gates, 462 U.S. at 238.

There is no allegation or evidence that Officer Chamberland made false statements in the warrant affidavit. Plaintiff claims, rather, that the officer intentionally or recklessly omitted material facts. In his memorandum in opposition to summary judgment, plaintiff contends that Chamberland made two

omissions: "[h]e failed to mention that he did not see Ms. Putnam's parents when he arrived at her house on June 18, 2003 in response to her call"; and "[h]e failed to mention that he was an owner of a diner which Leanna Putnam and Thomas Fournier frequented."  See Pl's Mem. at 4-5.[4]  Plaintiff contends that "a reasonable juror could conclude that Chamberland's failure to mention these facts, particularly his personal connection with Thomas Founier and Leann[e] Putnam, presented a skewed recitation of the facts to the Judge who was presented with the warrant affidavit."  Id.

When omitted information is relevant to the determination of probable cause, a court must correct the affidavit to include the information and determine whether the affidavit still provides probable cause.  See Brown, 35 F.3d at 99; Smith v. Edwards, 175 F.3d 99, 105 (2d Cir. 1999).  If probable cause remains, no constitutional violation has occurred.  Summary judgment is appropriate when there can be no genuine dispute that a judge would have issued the warrant on a corrected affidavit.  See id. at 105 n. 5 (citing Velardi v. Walsh, 40 F.3d 569, 574 (2d Cir. 1994)).

Applying this standard, Officer Chamberland is entitled to

---

[4] Putman and Fournier have testified that they first learned Chamberland had an ownership interest in the diner after June 18, 2003, that they are not friends of his, and that the plaintiff also frequents the diner.  See Putman Dep., Def.'s Reply Mem. Ex. 1 at 29-30; Fournier Dep., Def.'s Reply Mem. Ex. 2 at 9, 11.

summary judgment.  The offense of custodial interference in the second degree has four elements: (1) a child less than sixteen years old, (2) is held or kept from the child's lawful custodian, (3) by a person who knows he has no legal right to do so, (4) after the custodian requests the return of the child.  See Conn. Gen. Stat. § 53a-98(3).  The omissions noted by the plaintiff are arguably relevant to the third or fourth elements but they do not negate probable cause.

    The fact that Officer Chamberland did not see Putnam's parents at the School Street address when he arrived there after 10:05 p.m. does not make it less likely that Putnam asked the plaintiff to return the children, as required by the fourth element.  Nor does it make it less likely that the plaintiff knew his refusal to return the children was illegal, as required by the third.  Plaintiff contends that Officer Chamberland's ownership interest in the local diner frequented by Putnam and Fournier, if disclosed in the affidavit, would place the officer's veracity in issue.  Even assuming the officer's interest in the diner could support a reasonable inference that he was biased in favor of people who frequented it, as plaintiff suggests, the officer's affidavit provided the judge with the conflicting statements given to him by the plaintiff and Putnam, enabling the judge to determine which statement to credit.  See

Local Rule 56(a)(1) Statement at ¶¶ 12-13, 15.[5]

<u>Qualified Immunity</u>

As a government official performing a discretionary function, Officer Chamberland is entitled to qualified immunity under § 1983, even if he did not have probable cause, unless the corrected affidavit is "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." <u>Malley v. Briggs</u>, 475 U.S. 335, 344-45 (1986). This test is met if officers of reasonable competence could disagree on whether the corrected affidavit establishes probable cause. <u>See</u> <u>Lennon v. Miller</u>, 66 F.3d 416, 420 (2d Cir. 1995). Stated differently, the shield of qualified immunity is lost only if no reasonable officer could conclude that the corrected affidavit establishes probable cause. <u>See</u> <u>Cartier v. Lussier</u>, 955 F.2d 841, 846-47 (2d Cir. 1992); <u>Magnotti v. Kuntz</u>, 918 F.2d 364, 367-68 (2d Cir.

---

[5] Though not mentioned in plaintiff's memorandum in opposition, plaintiff has also faulted Chamberland for omitting to disclose in his affidavit for the arrest warrant that he had failed to follow up on a complaint by the plaintiff in October 2002 that Fournier had prevented Sean from attending a scheduled visit with the plaintiff. Chamberland has sworn that he has no specific recollection of any contact with the plaintiff before June 18, 2003. <u>See</u> Chamberland's Affidavit in Support of Motion for Summary Judgment, ¶ 34 (doc. 44-3). Assuming for present purposes that the plaintiff did complain to Chamberland about Fournier in October 2002, and Chamberland failed to follow up, the omission of this information from Chamberland's affidavit did not violate the Fourth Amendment. Chamberland's affidavit put the Superior Court Judge on notice that the officer had responded to custodial issues involving the plaintiff and Putnam in the past. Adding a reference to the October 2002 incident would not make it less likely that on the night in question Putnam demanded return of the children and plaintiff failed to comply.

1990).

In light of the preceding discussion, Officer Chamberland is clearly entitled to qualified immunity. Even if the corrected affidavit does not establish probable cause, reasonable officers could disagree about whether the probable cause test is met. See Lennon, 66 F.3d at 424. "Such is sufficient to establish the qualified immunity defense as a matter of law in defendant's favor." Cartier, 955 F.2d at 847.

 B. Malicious Prosecution

To prove a claim of malicious prosecution under § 1983 a plaintiff must establish the elements of a malicious prosecution under state law. Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002). In Connecticut, a plaintiff claiming malicious prosecution must prove that: (1) the defendant either initiated or procured the initiation of a criminal proceeding against him; (2) the criminal proceeding terminated in his favor; (3) the defendant acted without probable cause; and (4) the defendant acted with malice. See McHale v. W.B.S. Corp., 187 Conn. 444, 447 (1982). Here, plaintiff cannot satisfy the first, third or fourth elements.

With regard to the first element, plaintiff offers no evidence that Officer Chamberland did anything more than submit his affidavit to the State's Attorney's office. There is no evidence that the officer exerted pressure on the prosecutors, submitted knowing misstatements to them or concealed evidence

from them after he drafted the arrest warrant affidavit.  See Simpson v. Denardo, No. 3:02-CV-1471(MRK), 2004 WL 1737444, *9 (D. Conn. July 29, 2004).  See also Taylor v. Meachum, 82 F.3d 1556, 1563-64 (10th Cir. 1996).

Regarding the third element, plaintiff cannot establish that Officer Chamberland acted without probable cause to believe plaintiff "could be successfully prosecuted."  See Szekeres v. Schaeffer, Nos. Civ. 3:01-CV-2099(MRK) & 3:01-CV-2108(MRK), 2004 WL 722240, at *9 (D. Conn. March 26, 2004)(citing Posr v. Court Officer Shield # 207, 180 F.3d 409, 417 (2d Cir. 1999)).  As discussed above, the arrest was supported by probable cause.  Plaintiff does not allege that Officer Chamberland obtained additional information negating probable cause after drafting the arrest warrant affidavit.  In the absence of an allegation that Officer Chamberland had reason to believe probable cause no longer existed, the existence of probable cause to arrest precludes the malicious prosecution claim.  See Moreno v. New Haven Dep't of Police Serv., No. 3:07-CV-851(JBA), 2009 WL 606110, at *9 (D. Conn. Mar. 9, 2009).

Finally, with regard to the fourth element, the evidence is insufficient to permit a finding that Officer Chamberland acted with malice.  The Second Circuit defines malice as a "wrong or improper motive, something other than a desire to see the ends of justice served."  Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996).  Plaintiff alleges that Officer Chamberland was

14

part owner of a diner frequented by Putman and Fournier and that Officer Chamberland had previously failed to investigate and act on plaintiff's complaints that Putnam and Fournier interfered with his visitation rights.  Plaintiff does not provide evidence to support these allegations.  Nor does he explain how they support a finding that Officer Chamberland acted with an improper motive in drafting the arrest warrant.  Plaintiff has not come forward with evidence that would permit a trier of fact to conclude that Officer Chamberland acted with malice in connection with plaintiff's prosecution.  See, e.g., Khan v. Costco Wholesale, Inc., No. 99 CV 3944(SJ), 2001 WL 1602168, at *10 (E.D.N.Y. Dec. 13, 2001)(existence of probable cause and absence of malice warranted summary judgment).

Conclusion

    For the foregoing reasons, defendant's motion for summary judgment is hereby granted.  The § 1983 claims are dismissed with prejudice and the pendent state law claims are dismissed without prejudice.  The Clerk shall close the case.

    So ordered this 30th day of March 2010.


                                       /s/RNC
                                  Robert N. Chatigny
                            United States District Judge